UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ELINA MORANO, MICHAEL WILSON, ) | |
| ) | |
| Plaintiff(s), ) | |
| ) | |
| v. ) | |
| ) | |
| HUNTER WARFIELD, INC. ) | |
| ) | |
| Defendant. ) | Jury Demanded |

## COMPLAINT

Plaintiffs, Elina Morano and Michael Wilson, bring this action under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq. ("FDCPA"), for a finding that Defendant's debt collection actions violated the FDCPA, and to recover damages for the Defendants' violations of the FDCPA, and alleges:

## JURISDICTION AND VENUE

1. This Court has jurisdiction pursuant to § 1692k(d) of the FDCPA, and 28 U.S.C. § 1331.

2. Venue is proper in this District because: a) parts of the acts and transactions occurred here, and b) Defendant transacts substantial business in this District.

## STANDING

3. Plaintiffs have suffered an injury in fact that is traceable to Defendant's conduct and that is likely to be redressed by a favorable decision in this matter.

4. Specifically, as outlined in more detail below, Plaintiffs suffered a concrete injury as a result of Defendant's attempts to collect an alleged debt from the Plaintiffs with no legal

right to do so and for making direct contact with Plaintiffs when it knew or should have known they were represented by counsel.

5. Plaintiffs have thus suffered an injury as a result of Defendant's conduct, giving rise to standing before this Court. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1544 (2016), quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 580 (1992) (Congress has the power to define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before.); *Bellwood v. Dwivedi*, 895 F. 2d 1521, 1526-27 (7th Cir. 1990) ("Congress can create new substantive rights, such as a right to be free from misrepresentations, and if that right is invaded the holder of the right can sue without running afoul of Article III, even if he incurs no other injury[.]").

## PARTIES

6. Plaintiffs, Elina Morano and Michael Wilson ("Plaintiffs'), were residents of the State of Illinois, from whom Defendant attempted to collect a delinquent consumer debt owed for an alleged debt to Brook Run Apartments of Arlington Heights, Illinois ("Brook Run"). Plaintiff is thus a consumer as that term is defined in 15 U.S.C. §1692a(3) of the FDCPA.

7. Defendant, Hunter Warfield, Inc. ("Hunter Warfield" or "Defendant"), is a Maryland corporation with its principal place of business at 4620 Woodland Corporate Blvd., Tampa, Florida 33614. Its registered agent is Illinois Corporation Services C, which can be found at 801 Adlai Steven Drive, Springfield, IL 62703. (Exhibit A, Record from Illinois Secretary of State).

8. Hunter Warfield is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

9.  Hunter Warfield holds a collection agency license from the state of Illinois. (Exhibit B, Record from Illinois Department of Financial and Professional Regulation).

10. Hunter Warfield regularly collects or attempts to collect defaulted consumer debts, and is a "debt collector" as defined in 15 U.S.C. § 1692a(6) of the FDCPA.

## FACTUAL ALLEGATIONS

11. Plaintiffs incurred a debt for personal and or household purposes, originally to Brook Run Apartments ("alleged debt") for a residential apartment lease. The alleged debt is thus a "debt" as that term is defined by §1692a(5) of the FDCPA.

12. Plaintiffs entered into a residential lease agreement with Brook Run Apartments on or about July 7, 2016 for an annual term for the dwelling unit commonly known as 2704 Buffalo Grove Rd., Unit 207, Arlington Heights, IL 60004.

13. On or about March 30, 2017, Plaintiffs informed Brook Run pursuant to paragraph 4(A) of the Lease Contract Buy-Out Addendum, a part of the July 7, 2016 lease, that they would be vacating the unit effective April 30, 2017, and thus terminating the lease early. (Exhibit C, Lease Contract Buy-Out Agreement).

14. After the Plaintiffs provided their notice of early termination, Brook Run attempted to elicit a "lease termination" fee from Plaintiffs in spite of clear language to the contrary in the Lease Contract Buy-Out Agreement.

15. Thereafter, on or about April 3, 2017, Plaintiffs, through counsel, issued a dispute letter directly to Brook Run Apartments outlining the nature of their dispute providing notice that they refused to pay the alleged termination claim. (Exhibit D, Dispute Letter)

16. Defendant Hunter Warfield was later retained or hired by Brook Run to attempt to collect the alleged debt from Plaintiffs.

17. On or about May 12, 2017, Defendant Hunter Warfield sent Plaintiff Michael Wilson a collection letter, requesting payment of $1,671.51 for the alleged debt to Brook Run Apartments that had been disputed previously through counsel. (Exhibit E, Wilson Collection Letter)

18. On that same day, May 12, 2017, Defendant Hunter Warfield sent Plaintiff Elina Morano an identical collection letter, requesting payment of $1,671.51 for the alleged debt to Brook Run Apartments. (Exhibit F, Morano Collection Letter).

19. The letters provided a file number, the name of the alleged creditor, the balance allegedly due, a request for payment, and a statement that the letter was an attempt to collect a debt.

20. Thus, the letters were communications as that term is defined at 15 U.S.C. §1692a(2) of the FDCPA.

21. The letters also threatened to report the debt to "one or all of the . . . three national reporting bureaus . . ."

22. The letters further state that "because interest continues to accrue on your account, the amount due on the day that you pay may be greater than the balance due set forth above. For a payoff amount, or any other information concerning your account, please contact us . . ."

23. On the second page, the letter also states that "[s]hould you elect to make a payment through our online payment portal or by phone, a payment transaction fee may be charged to you."

24. Upon information and belief, no interest was accruing at the time the collection letters were sent, and Defendant is not authorized to charge a transaction fee for online or telephonic payments.

25. In addition, Hunter Warfield called Plaintiff on at least the following dates:

> June 12, 2017 at approximately 1:54pm CST via phone number 844-440-2807
> June 19, 2017 at approximately 3:16pm CST via phone number 813-283-4670
> June 21, 2017 at approximately 11:44am CST via phone number 844-440-2806
> July 7, 2017 at approximately 3:14pm CST via phone number 866-494-9902

26. Discovery may reveal additional phone calls as well. Upon information and belief, from June 2017 until August 2017 during a period of six (6) or more weeks, the Plaintiffs received 6-8 phone calls per week.

27. The phone calls made directly to Plaintiffs were made with the intention of collecting the alleged debt.

28. Each phone call that was answered by the Plaintiffs, an agent stated that the call was "an attempt to collect a debt."

29. Thus, the calls were communications as that term is defined at §1692a(2) of the FDCPA.

30. Plaintiffs are both "persons" as defined by 47 U.S.C. § 152(10).

31. Hunter Warfield used an "automated telephone dialing system," as defined by 47 U.S.C. § 227(a)(1).

32. Each phone call that was answered by the Plaintiffs, there was a delay prior to a live person coming on the line.

33. The telephone number Defendants called was assigned to a cellular telephone service pursuant to 47 U.S.C. § 227(b)(1)(a)(iii).

34. The telephone call(s) constituted a call that was not for emergency purposes as defined by 47 U.S.C. § 227(b)(1)(A)(i).

35. Plaintiffs did not provide prior express consent to receive calls on their cellular telephones, pursuant to 47 U.S.C. § 227(b)(1)(A).

36. Plaintiffs did not provide her cellular telephone number to Brook Run Apartments.

37. Plaintiffs did not give their consent to Defendant to be called on their cell phones.

38. 47 U.S.C. § 227(b) of the TCPA provides as follows:

> **(1) Prohibitions**
>
> **It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—**
>
> **. . . (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice—**
>
> **. . . (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call. . . .**

39. Hunter Warfield placed a call(s) in violation of 47 U.S.C. § 227(b) of the TCPA when it called Plaintiffs' cell phones for a non-emergency purpose using an automated dialer where Plaintiffs had not provided express prior consent to be called at this number by Defendant.

40. 15 U.S.C. § 1692e of the FDCPA provides as follows:

> **False or misleading representations**
>
> **A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: . . .**

> **(2) The false representation of—**
>
> > **(A) the character, amount, or legal status of any debt; or**
>
> **(5) The threat to take any action that cannot legally be taken or that is not intended to be taken…**
>
> **(8) Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed . . .**
>
> **(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer. . . .**

41. By sending Plaintiffs collection letters stating that interest continued accruing on their accounts, that Plaintiffs would be charged a transaction fee for electronic payments, and repeatedly calling Plaintiffs requesting payment on a non-existent debt claim, Defendant falsely represented that it had a legal right to attempt to collect the debt and charge interest as well as transaction fees, even though it had no legal right to do so, in violation of §§ 1692e, 1692e (2)(A), §1692e (5)and §1692e (10).

42. By threatening to report the alleged debt to credit reporting bureaus even though Plaintiffs did not owe the alleged debt, Hunter Warfield violated §§ 1692e and 1692e(8).

43. 15 U.S.C. § 1692f of the FDCPA provides as follows:

> **Unfair practices**
>
> **A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:**
>
> **. . .**
>
> **(1) The collection of any amount (including interest, fee, charge, or expense incidental to the principal obligation) unless such amount**

> **is expressly authorized by the agreement creating the debt or permitted by law.**

44. Hunter Warfield violated 15 U.S.C. §§1692f and 1692f1 by attempting to collect the alleged debt, interest, and/or transaction fees from Plaintiffs when Defendant had no legal right to collect do so.

45. 15 U.S.C. § 1692c(a)(2) of the FDCPA provides as follows:

> **If the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address, unless the attorney fails to respond within a reasonable period of time to a communication from the debt collector or unless the attorney consents to direct communication with the consumer…**

46. Hunter Warfield violated §1692c(a)(2) when it repeatedly attempted to contact Plaintiffs through robocalls and letters, even though it could have readily ascertained that Plaintiffs were represented by an attorney as Plaintiffs' attorney disputed the alleged claim directly with the Defendant's client creditor.

47. Plaintiffs had been assured by their attorney that this claim was successfully resolved and the creditor (or any of its agents or debt collectors) would cease communicating with them directly when they vacated the premises and disputed the alleged debt with no response from the original creditor.

48. Plaintiffs suffered emotional distress, annoyance, aggravation and inconvenience due to Defendant's collection letters and repeated phone calls.

49. Defendant's collection communications are to be interpreted under the "unsophisticated consumer" standard. See, *Gammon v. GC Services, Ltd. Partnership*, 27 F.3d 1254, 1257 (7th Cir. 1994).

## COUNT I-FAIR DEBT COLLECTION PRACTICES ACT

50. Plaintiffs re-alleges above paragraphs as if set forth fully in this count

51. By sending Plaintiffs collection letters stating that interest continued accruing on their accounts, that Plaintiffs would be charged a transaction fee for electronic payments, and repeatedly calling Plaintiffs requesting payment on a non-existent debt claim, Defendant falsely represented that it had a legal right to attempt to collect the debt and charge interest as well as transaction fees, even though it had no legal right to do so, in violation of §§ 1692e, 1692e (2)(A), §1692e (5)and §1692e (10).

52. By threatening to report the alleged debt to credit reporting bureaus even though Plaintiffs did not owe the alleged debt, Hunter Warfield violated of §§ 1692e and 1692e(8).

53. Hunter Warfield violated 15 U.S.C. §§1692f and 1692f1 by attempting to collect the alleged debt, interest and/or transaction fees from Plaintiff when Hunter Warfield had no legal right to collect to do so.

54. Hunter Warfield violated §1692c(a)(2) when it repeatedly attempted to contact Plaintiffs via collection letters and robocalls, even though it could have readily ascertained that she was represented by an attorney, as Plaintiffs' attorney disputed the alleged claim directly with the Defendant's client creditor.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor and against Defendant as follows:

    A. Actual damages pursuant to 15 U.S.C. § 1692k(a)(1);

    B. Statutory damages pursuant to 15 U.S.C. § 1692k(a)(2);

    C. Costs and reasonable attorney fees pursuant to 15 U.S.C. § 1692k(a)(3); and

    D. Such other or further relief as the Court deems proper.

## COUNT II—TELEPHONE CONSUMER PROTECTION ACT

55. Plaintiff re-alleges the above paragraphs as if set forth fully in this count.

56. Hunter Warfield placed calls in violation of 47 U.S.C. § 227(b) of the TCPA when it called Plaintiffs' cell phone for a non-emergency purpose using an automated dialer where Plaintiff had not provided express prior consent to be called by Defendant at that number.

57. As a result of Defendant's violations of the TCPA, Plaintiffs are entitled to an award of statutory damages.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor and against Defendant as follows:

    A. Statutory damages of $500 for each violation determined to be negligent pursuant to 47 U.S.C. §227(b)(3)(B); and

    B. Such other or further relief as the Court deems proper.

## JURY DEMAND

Plaintiff demands trial by jury.

Respectfully Submitted,

By:   s/ *Robert J. Tomei Jr.*
One of Plaintiff's Attorneys

Robert J. Tomei Jr.
TOMEI LAW, P.C.
223 N IL. Rt. 21, Ste. 14
Gurnee, IL 60031
Ph: (847) 596-7494
Fx: (847) 589-2263
Robert@TomeiLawFirm.com

## DOCUMENT PRESERVATION DEMAND

Plaintiff hereby demands that defendant take affirmative steps to preserve all recordings, data, documents, and all other tangible things that relate to plaintiff, the events described herein, any third party associated with any telephone call, campaign, account, sale or file associated with plaintiff, and any account or number or symbol relating to them. These materials are likely very relevant to the litigation of this claim. If defendant is aware of any third party that has possession, custody, or control of any such materials, plaintiff demands that defendant request that such third party also take steps to preserve the materials. This demand shall not narrow the scope of any independent document preservation duties of the defendant.

By:    s/ *Robert J. Tomei Jr.*
One of Plaintiff's Attorneys

## **NOTICE OF LIEN AND ASSIGNMENT**

Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount as a court awards. All rights relating to attorney's fees have been assigned to counsel.

By:    s/ *Robert J. Tomei Jr.*
One of Plaintiff's Attorneys